## THE CUMBERLAND MUTUAL FIRE INSURANCE COMPANY v. DAVID GILTINAN.

1. The general rule of evidence is that the existence and legal force of a written instrument forming the basis of the issue cannot be proved without its production or its absence being accounted for by the admissions of the defendant, being the party who executed such instrument.

2. But, *held*, as an exception to such rule, that the admission of a party insured, contained in the proof of loss which was required to be furnished to the company, under oath, and to set forth the policies existing on the premises, was admissible to prove the existence of such policies.

3. Where a condition of insurance was that if the property should be re-insured, a written sanction thereof should be obtained from the company within ten days, a complete defence was not established by showing the mere fact of the existence of an unauthorized re-insurance, without proving that the same had been in existence at least ten days before the fire.

In error to the Supreme Court.

For the plaintiff in error, *Wm. E. Potter*.

The action was covenant, upon policy of insurance No. 17,218, insuring the frame dwelling and boarding-house of the plaintiff in the suit, in Atlantic City, for the sum of $3000. The policy was issued pursuant to a written application. The policy contained a promise of the payment of a loss, " according to the provisions of said charter, and the conditions accompanying this policy and making a part thereof."

The conditions were printed on the policy. The policy contained recognition of other insurance as follows : " Insurance for $2000 in the Trade Insurance Co., and $1000 with the Imperial, on the building as above, or that amount allowed in other companies, making in all $6000 insured."

The defence, by several pleas, interposed in bar other insurance in violation of the second condition of insurance. At the trial the plaintiff made the necessary *prima facie* proof of the fire, loss, damage, &c. The defendant company offered in evidence, without objection, the written admissions of the plaintiff, showing other insurance in violation of the condition of the policy above noted. It has been stated above that the policy, when issued, permitted $3000 of additional or other insurance. This amount was, by the consent of the defendant company, enlarged to $4000.

The consent was in writing. There seems to have been previous correspondence touching it, but the first in proof is a letter from plaintiff to Iszard, an agent of the insurance company, dated May 6th, 1879. This is followed by one dated September 13th, 1879, from Provost & Herring, who are shown by the testimony of the plaintiff himself to have been his agents in this regard. Then follows one dated November 13th, 1879, then one dated December 9th, 1879. This letter enclosed slip containing form of endorsement for additional insurance. This endorsement was made, same day, on the original application for insurance. The effect of this consent of the in-

surance company was to increase the amount of the insurance from $3000, the amount allowed by the policy, to $4000. The correspondence shows conclusively that the plaintiff was not only legally chargeable with notice of the second condition of insurance, but that he knew it as a matter of fact and acted upon it.

At the trial the policies of the other insurance companies were not produced, but the defendant company relied upon the admission of the plaintiff for the proof of other insurance, in violation of the condition of the policy above noted. These admissions consist, first, in the proofs of loss filed by the plaintiff with the defendant. These were put in evidence at the trial, but were inadvertently omitted from the printed case. The material parts of them are as follows:

" *To the Cumberland Mutual Fire Insurance Co., of Bridgeton, N. J. :*

" By your policy of insurance, No. 17,218, dated May 26th, 1874, issued at your office, Bridgeton, N. J., and continued until the 26th day of May, 1884, you insured David Giltinan against loss and damage by fire, as more fully appears by the printed portions and conditions of said policy, the written portions being as follows, viz. : ' On the frame dwelling and boarding-house, situate on the northerly side of Pacific avenue, between North Carolina and Pennsylvania avenues, Atlantic City, N. J.'

"Also there was other insurance on said property to the amount of $5000 and more, as follows, copies of which policies and endorsements are hereunto annexed :

| | |
|---|---:|
| " Insurance Company of North America, of Pennsylvania, | $1500 |
| " Pennsylvania Fire, | 1500 |
| " La Confiance, France, | 1000 |
| " Hanover, of New York, | 500 |
| " Continental, New York, | 500 |
| | $5000 |

" On his three-story frame boarding-house, situate on the

northerly side of Pacific avenue, east of North Carolina avenue, Atlantic City, New Jersey, other insurance permitted, &c.

"December 31st, 1879, permission given assured to introduce a heater into premises herein insured by this policy, for the purpose of heating.

"A fire occurred on the 31st day of December, A. D. 1880, about the hour of half-past five o'clock A. M., and originated as follows, viz.: 'From heater in the cellar.'"

The proofs of loss state the cash value of the building as $11,665, and the amount claimed from the defendant company $3000. They are sworn to by the plaintiff in the suit, before a notary public, January 10th, 1881. The admission contained in these proofs of loss was followed by other admissions in the writings of the plaintiff. They begin with the letter of the plaintiff, enclosing his proofs of loss, dated January 10th, 1881. This letter was acknowledged by the secretary of the defendant company January 18th, 1881. This letter was replied to by the plaintiff January 21st, 1881, enclosing a statement referred to in said letter. The plaintiff again wrote to the defendant company March 14th, 1881. In reply to this last-named letter, the defendant company wrote the letter of March 18th, 1881. The correspondence referred to, with the proofs of loss, contains the admissions of other insurance referred to in the pleas of the defendant.

At the close of the defendant's testimony the court instructed the jury to render a verdict for the plaintiff, and refused the requests to charge of the defendant.

I. The bill of exceptions in this case presents for solution the question whether admissions of the contents of a written document are receivable as primary evidence of the contents thereof when the document itself is not produced or its absence accounted for.

In *Turrell* v. *City of Elizabeth*, 14 *Vroom* 272, in 1881, this court held that the admission by one of the parties of an assessment to defray the cost of paving streets was sufficient proof of the assessment to go to the jury. This court also

held, in *Mayor, &c.*, v. *Green*, 13 *Vroom* 627–629, that an admission that an assessment was set aside by one of the parties was not only sufficient proof of it, but that it carried with it the legal presumption of correctness and legality. Save as stated in these cases, the question presented by the cause at bar has not been decided in this state.

In England the law is clearly settled in favor of the admission of the proof mentioned.

The leading case is *Slatterie* v. *Pooley*, 6 *Mes. & Wels.* 664–668, decided by the unanimous opinion of the Court of Exchequer in 1840, Baron Parke delivering the leading opinion. He says: " Whatever a party says, or his acts amounting to admission, are evidence against himself, though such admissions may involve what must necessarily be contained in some deed or writing. For instance, a statement by a party, or one under whom he claims, that an estate had been conveyed to or from such persons, or that such person filled the character of assignee, which could only be by deed or the like, and any one experienced at Nisi Prius must know how constant the practice is.

" Indeed, if such evidence were inadmissible, the difficulties thrown in the way of almost every trial would be nearly insuperable. The reason why such parol statements are admissible without notice to produce or accounting for the absence of the written instrument is that they are not open to the same objection which belongs to parol evidence from other sources, where the written evidence might have been produced ; for such evidence is excluded from the presumption of its untruth arising from the very nature of the case, where better evidence is withheld ; whereas, what a party himself admits to be true may reasonably be presumed to be so."

In a note to this case, as first published in 4 *Jur.* 1039, the reporter said : " The present case seems the first in which the broad question of whether admissions of the contents of written documents are receivable as primary evidence of the contents of those documents, has been fairly brought before the court sitting *in banc.* The above unanimous decision in

the affirmative establishes an important principle in this branch of our jurisprudence which will no doubt be fully recognized and extensively acted on in the future."

In *Howard* v. *Smith*, 3 *Man. & G.* 254; *S. C.*, 3 *Scott N. R.* 574, the Court of Common Pleas unanimously affirmed the law " as laid down in Slatterie *v.* Pooley." Tindall, C. J., delivered the opinion.

In *Pritchard* v. *Bagshaw*, 11 *C. B.* 459, an abstract and affidavit used by a party upon a reference before a master, to prove title in himself, were held admissible in evidence against him, upon the principle laid down in Slatterie *v.* Pooley. The court would not even allow a rule to go upon this point. Chief Justice Jervis, to the objection that an abstract contained only recitals of or extracts from certain deeds, says: " It would be a dangerous principle to lay down that a statement made by a party was not evidence because it was not quite full."

In *Regina* v. *Inhabitants of Basingstoke*, 14 *Q. B.* (*N. S.*) 611, the question was as to the removal of a pauper, which required a certificate from the parish of W. of a settlement in that parish. The court below stopped the case on the ground that no certificate was produced or no evidence of its loss given. The order of removal was quashed subject to the opinion of the Court of Common Pleas *in banc.* The court held that the conduct of the overseers of the parish of W. was evidence of an admission of that parish that there existed such a certificate; for that an admission of the effect of a written instrument by a party to a cause supersedes the necessity of producing or accounting for such instrument equally whether the admission be made in words or be inferred from acts. The court say : " Slatterie *v.* Pooley establishes that if a party, by word admits the contents of a written document, such admission is legal evidence against him, not as secondary evidence of the contents of a written document, but as original evidence."

In a note to *Duchess of Kingston's Case*, 2 *Smith's Lead. Cas. pt.* 2, *p.* \*802, the annotators say, speaking of estoppel, which is a conclusive admission : " Such being the general

nature of an estoppel, it matters not what is the fact thereby admitted, nor what would be the ordinary and primary evidence of that fact, whether matter of record, or specialty, or writing unsealed, or mere parol. The fact may in each case be proved, the ordinary evidence rendered unnecessary by an estoppel; and this is no infringement on the rule of law requiring the best evidence, and forbidding secondary evidence to be produced until the sources of primary evidence have been exhausted; for the estoppel professes, not to supply the ordinary instrument of evidence, but to supersede the necessity of any evidence by showing that the fact is already admitted."

So, too, it has been held that an admission, which is of the same nature as an estoppel, though not so high in degree, may be allowed to establish facts which, were it not for the admission, must have been proved by certain steps appropriated by law to that purpose.

Slatterie v. Pooley has been followed uniformly in England, and never overruled. *Ashmore* v. *Hardy*, 7 *C. & P.* 504; *Sewell* v. *Stubbs*, 1 *C. & P.* 73 ; *Murray* v. *Gregory*, 5 *Wels. & H.* 468 ; *Fox* v. *Waters*, 12 *Ad. & E.* 43.

In this country, since the decision in Slatterie v. Pooley, the leading courts of the country have followed it and adopted the principle therein established as to the admission of evidence.

In *Loomis* v. *Wadhams*, 8 *Gray* 557, 562, the remarks of Justice Parke in that case are quoted with approval by the court. In *Smith* v. *Palmer*, 6 *Cush.* 513, the court permitted a plaintiff in a suit to prove, by the oral declarations, confessions and admissions of defendant, the pendency of a suit at law in Maine, where the latter was plaintiff, failure to discontinue it, and its prosecution to judgment and execution. They say : "A party's own statements and admissions are in all cases admissible in evidence against him, though such statements may involve what necessarily be contained in some writing, deed or record. Thus, the statements of a party that certain land had been conveyed might be admitted, though the conveyance must be by deed recorded."

*Blackington* v. *City of Rockland*, 66 *Me.* 332, was a suit

against a municipality for damages. · The statute required a·
notice to be given to the town. To prove the receipt of the·
notice plaintiff produced the municipal records containing a
minute of the receipt of the notice. The notice was not pro-
duced or its absence accounted for. The court held the records
of the municipality, admitting receipt of notice, original and
not secondary evidence. They quote with approval what
Baron Parke says in Slatterie *v.* Pooley, and note that the·
Irish courts, and, in this country, the New York courts, take a.
different view of the proposition. The court states their adop-
tion of the rule as this: "That the written admissions of a.
party in suit are receivable as evidence against him, to prove·
facts directly in issue, although such facts are established by
a writing not produced and its absence not accounted for."

In *Edgarton* v. *Richardson,* 33 *Ohio St.* 581, 592, the court
held that a divorce could be proved by the admissions of the·
party without producing the record. In *Taylor* v. *Peck,* 21
*Gratt.* 11, the court quotes Slatterie *v.* Pooley and the lan-
guage of Baron Parke with approval.

In *Chricton·* v. *Smith,* 34 *Md.* 42, the court held that a·
copy of a charter-party was admissible in evidence upon the
part of the plaintiff, because the defendants had admitted it to·
be true by using it in another forum, in a suit between them
and another party, as the charter-party of the plaintiff and
defendants in the present suit. In *Philadelphia, Wilmington·
and Baltimore R. R. Co.* v. *Howard,* 13 *How.* 307, the·
Supreme Court of the United States held the seal of a corpo-
ration to a deed to be properly proved by an admission, viz.,
using the same as the deed of the corporation in another suit.
See, also, *Woolverton* v. *State,* 16 *Ohio* 173 ; *Edgarton* v. *Rich-
ardson,* 33 *Ohio St.* 581 ; *Edwards* v. *Tracy,* 62 *Penna. St.*
374 ; *Conrad* v. *Farrow,* 5 *Watts* 536 ; *Kriser* v. *Neeson,* 66
*Penna. St.* 253.

The American editor of Best on the Principles of Evidence,
in a note, (*Best on Ev., p.* 218, § 215, *note* 3 *c,*) states: "Whether
any admission of the contents of a document not introduced in·
evidence will dispense with its production or other proof—in

other words, whether *Slatterie v.* Pooley is law in this country —is in dispute." This remark cannot be disputed, for there are certain cases in this country opposed to the rule in that case, the leading ones being in the State of New York, in Johnson and Wendell, and decided long prior to the English case. See, also, as against the doctrine, *Threadgill* v. *White,* 11 *Ired.* 591 ; *Ware* v. *Robinson,* 18 *Ala.* 105 ; *Jamison* v. *Conway,* 5 *Gilm.* 227. *McMaster* v. *Insurance Co. of North America,* 55 *N. Y.* 222, and *New York Central Insurance Co.* v. *Watson,* 23 *Mich.* 486, directly sustain it.

II. Having thus adverted to the leading authorities upon the question of evidence here mooted, it remains to consider their weight. This is determined, first, by the reputation of the courts and judges treating of the question ; and secondly, by the force of the reasoning *pro* or *con.*

Slatterie *v.* Pooley was the unanimous decision of the Court of Exchequer, of which Lord Abinger was Chief Baron, and Parke, Gurney and Rolfe associate judges.

Howard *v.* Smith was the unanimous decision of the Court of Common Pleas, of which Tindall was Chief Justice, and Bosanquet an associate judge.

Pritchard *v.* Bagshaw was also an unanimous decision of this same court ten years later, Jervis then being Chief Justice.

As to the reasoning in favor of the evidence in question, very little can be added to what has been quoted above, from the rulings of Parke and Lord Abinger, and the note of the learned editors of Smith's Leading Cases.

A few suggestions may be made with propriety. Suppose, in the case at bar, a state of the case, showing the existence of other insurance, had been agreed upon, would the statement therein made have bound the plaintiff in the suit ? But such a statement would be an admission pure and simple,. and nothing more. It would operate as in the nature of an estoppel, but as we have seen (*supra*) an estoppel differs from any other admission only in degree, not in quality. It is a conclusive admission. But once concede that an admission in any form of the contents of a written document is receivable as

primary evidence of its contents, what principle is to be interposed to exclude an admission in any other form? Will it be said that an admission must be in writing? If so, that condition is fully met here; or, that the admission must be a full and exact copy of the written document? That condition can have no force because many parts of most, if not all, written documents are formal and immaterial.

The remarks of Chief Justice Jervis, in Pritchard *v.* Bagshaw, quoted *supra,* would seem to fully dispose of this objection. Besides, whether the admission is a full one or not, is, in itself, necessarily a question for the jury. If a copy were produced, the question under the evidence would be, Is the copy exact and full? Is a seal necessary to the validity of the admission? How can it be if the written document itself is not under seal? Stipulations of counsel, cases stated, admissions at the trial for the purposes of the suit are not under seal. Must the admission be by record? Suppose a record imperfectly verified, but used as a record in another suit by the party, and in a second suit introduced against him, on the ground that he had admitted it to be a record by his former use of it as such, would it not estop him as effectually as a record formally verified?

These illustrations, so far as I am able to discover, all tend to the conclusion that if any admissions of written documents are to be received as original evidence, all admissions thereof must be. What their force and effect shall be with the jury after admission, as Baron Parke remarks in the leading case, "is quite another matter." Some admissions are so conclusive that they cannot be denied; these are estoppels. Some do not rise to this dignity; some fall much below it; but all have the same generic quality, namely, they are facts stated by a party in interest against his interest, and for this reason, presumptively, true. But it may be urged that the admission may be a *confessio juris*—an admission of law pure and simple. Such admissions are not receivable as a general proposition, because admissions of parties cannot control the courts in administering the laws of the country. But a con-

fession (or admission) of a matter compounded of law and fact is receivable. 2 *Best on Ev.*, § 530.

The test a rule of evidence only.

After all, the criterion as to the admission or rejection of such evidence is a rule of evidence only. But these rules have no sacred and inflexible character. They have been adopted for convenience and safety, and are constantly changed under new conditions, as safety or convenience demands. Such result has been reached, in respect to the large class of testimony which is, in fact, hearsay, such as inscriptions on tombstones, books of accounts, &c.

In these matters the public convenience has overcome and changed the ordinary rule. So, also, the old rule, that a party claiming under a sheriff's deed must affirmatively show, by the recitals in it or by other evidence, the facts necessary to establish the due execution of the power of sale, has been in this state very materially changed by successive statutes.

In England, by the statute 17 *and* 18 *Vic.*, *c.* 125, § 6, it has been enacted that any instrument, to the validity of which attestation is not necessary, may be proved by admission or otherwise, as if there had been no attesting witness thereto.

So, also, the old and rigid rule that the evidence of a party in interest was inadmissible, is, in effect, abrogated. Examples might be multiplied.

The test spoken of is technical merely, and, like all technicalities, must yield, in this age, to the pressure of present affairs.

In addition to the reasons above suggested, against the application of the doctrine here contended for, the court, in the leading case criticising Slatterie *v.* Pooley, viz., *Lawless* v. *Quale*, 8 *Irish R.* 382, says that it will open the door to fraud. This is a not unusual argument, but a very vague one. It will apply with equal force to any other method of judicial action. The critic is himself criticised by the court in one of the English cases above cited, and his reasoning pronounced " very unsatisfactory." The following cases, in addition to those above cited, sustain my contention : *King* v.

*Cole,* 2 *Exch.* 628 ; *Boileau* v. *Rutland, Id.* 665 ; *Ridley* v. *Plymouth Grinding Co., Id.* 711 ; *Toll* v. *Lee,* 4 *Id.* 230 ; *Rex* v. *Welch,* 2 *Car. & K.* 296 ; *Ansell* v. *Barker,* 3 *Id.* 145 ; *Mutual Benefit Life Insurance Co.* v. *Newton,* 22 *Wall.* 32.

III. It should be noted that the evidence in question was offered and received without objection upon the part of the plaintiff in the suit.

IV. If I am right in my contention as to the true rule of law touching the admission of the evidence spoken of, it is clear that there were facts in the case that should have been submitted to the jury, and that the refusal of the court to do so was erroneous, as was also its refusal to charge as requested by the defendant below in the first request, and that therefore the judgment must be reversed.

For the defendant in error, *Samuel H. Grey.*

The defendant below was sued on a policy of insurance issued by defendant, containing a provision requiring notice to be given to defendant of any other insurance on the " same property " within ten days, and an endorsement thereof on the policy.    Defendant pleaded other insurance without notice. Plaintiff took issue on these pleas.    Upon the issues thus framed it was incumbent on defendant below to prove: (1) other insurance ; (2) on the same property ; (3) failure to notify such insurance to defendant and procure its endorsement.

These were the three affirmative propositions which defendant was obliged to sustain by competent evidence.

At the trial defendant attempted to establish this defence by offering a letter of plaintiff, (Exhibit D 21,) dated January 21st, 1881 ; a letter, (Exhibit D 22,) dated January 10th, 1881 ; a statement contained in Exhibit 21, and a proof of loss in Exhibit 22.    No other policies of insurance were produced ; no evidence of the existence of such policies or contracts of insurance, unless such evidence can be gathered from the exhibits referred to, was offered.    The defendant having

rested on this proof, the court directed a verdict for plaintiff, which was rendered. Error is assigned in several matters, unnecessary to enumerate.

The material inquiry is, Did the defendant sustain, by the evidence offered, the defence pleaded?

This defence is *strictissimi juris*. Such conditions as this are restrictions on the right of redress of the insured against the insurer on the contract. As such they impose a burden on the insured for the benefit of the insurer, and must therefore be strictly construed. *State Insurance Co.* v. *Maackens*, 9 *Vroom* 564; *Carson* v. *Jersey City*, 14 *Vroom* 300; *Warwick* v. *Mercer Co. Mutual Fire Insurance Co.*, 15 *Vroom* 85; *Jersey City Insurance Co.* v. *Nicoll*, 8 *Stew. Eq.* 291.

And as the violation of the condition involves a forfeiture, it must be clearly established. *Southard* v. *N. J. Central R. R. Co.*, 2 *Dutcher* 20. The strictness of proof required in cases of this kind is illustrated in *Lattan* v. *Royal Insurance Co.*, 16 *Vroom* 453.

To sustain the defence it was necessary for defendant to show a valid, outstanding, absolute contract of insurance, subsisting and enforceable at the time of the fire, by which plaintiff had indemnity against loss by a fire destroying this property. *Schenck* v. *Mercer Co. Mutual Fire Insurance Co.*, 4 *Zab.* 454; *Jersey City Insurance Co.* v. *Nicoll*, 8 *Stew. Eq.* 291; *Lindley* v. *Union Insurance Co.*, 65 *Me.* 368; *McMasters* v. *Insurance Co.*, 55 *N. Y.* 222.

The condition was predicated upon the existence of another contract of insurance. The language is, " other insurance," importing a complete, valid and binding agreement between insurer and insured. Whether such a contract exists must necessarily be a question of law to be resolved upon proof of the terms and conditions of the contract, and so strongly is this held, that evidence of the payment, by another company, of a loss on a policy whose condition is broken is no evidence of the existence of a contract for such other insurance as that here meant. *Thomas* v. *Builders Insurance Co.*, 119 *Mass.* 121; *Herdy* v. *Union Mutual Fire Insurance Co.*, 4 *Allen*

217 ; *Philbrook* v. *New England Mutual Fire Insurance Co.,* 37 *Me.* 137 ; *Lindley* v. *Union Ins. Co.,* 65 *Me.* 368.

The property covered by " other insurance" must be identical with that insured by the defendant, or it cannot avail itself of the breach of this condition. The object is to protect defendant against fraudulent and excessive insurance of the same thing. *Wood on Fire Ins., pp.* 595, 596, 597, 618.

It appears in this case that " additions " were made to the property originally insured by defendant in 1876 and in 1880. On none of these " additions " was the insurance extended in the policy. The company assented to the additions being made to the original property insured. It did not agree to indemnify plaintiff for any loss by burning of the additions. The continuance of the insurance spoken of in Exhibit D 9 was on the property described in the application and policy, and not on the additional property put upon the land by enlargement of the building.

The term " addition " has a technical meaning, and the presumption is that it was used in a technical sense, in the absence of explanatory proof to the contrary. It was a lateral extension of the building outside of the original structure. *Whitenack* v. *Roe,* 3 *Stockt.* 413 ; *Updike* v. *Skillman,* 3 *Dutcher* 131.

The inference from defendant's evidence then is that the property burned was not the same "property" as that which they insured, hence if "other insurance" existed on the property as it was when burned, it did not avoid the contract of defendant with plaintiff. And if there be a doubt whether it did or did not, that doubt should be resolved against defendant below, in whose favor, on this defence, no legal presumptions arise. 55 *N. Y.* 222.

The evidence of " other insurance " relied on to sustain pleas was contained in plaintiff's letter, and in proof of loss. This evidence was inconclusive and incompetent. It was incompetent because it was an effort to prove an agreement in writing without producing or accounting for the absence of that agreement, and because it was an attempt to establish a

legal result, to wit, a written contract, by the declaration or admission of one of the parties to that contract.

"The confession of a party as to the legal effect of his contract cannot bind him." Parker, C. J., in *Boston Hat Manufactory* v. *Messinger*, 2 *Pick.* 239.

That legal results arising from acts of parties cannot be shown by declaration of parties, see *Morgan* v. *Couchman*, 14 *C. B.* (78 *E. C. L.*) 101 ; *Jenner* v. *Jollifie*, 6 *Johns.* 9 ; *Hasbrouck* v. *Boker*, 10 *Johns.* 248 ; *Welland Canal Co.* v. *Hathaway*, 8 *Wend.* 480 ; *Taylor* v. *Henderson*, 38 *Penna.* 60, 61 ; *Bevins* v. *McElroy*, 11 *Ark.* 23–25 ; *Brooks* v. *Isbell*, 22 *Ark.* 496. Nor where the matter admitted is mixed up of law and fact. *Summersett* v. *Adamson*, 1 *Bing.* 73, 8 *E. C. L.* 255.

*Confessio juris* cannot be proved by admission ; *confessio facti* may. Nor will admissions involving an opinion of a party on the legal effect of deeds be admissible. 1 *Greenl. Ev.*, § 296, *and notes.*

The cases where courts of equity admit parol evidence of an oral admission to establish a resulting trust, which was recognized in *Midmer* v. *Midmer*, 11 *C. E. Green* 299, 305, as the modern rule, are not departures from the doctrine stated, because the proof is addressed to the establishment of a fact requiring no legal interpretation to show its existence, *i. e.*, the payment, by a purchaser, of the money of another person than himself for the acquisition of property.

It was inconclusive because in the evidence relied on it nowhere appears that plaintiff admitted that there was any outstanding contract of insurance with another company. The payment of money by another company is no such proof of contract, as already shown. Nor is the mere statement of "other insurance," for the reasons given. The party to a contract may admit his acts or declarations ; the law interprets their effect. He cannot admit, and by admission only, establish a purely legal conclusion. Admission is a dispensation from proof, and is limited to things which must be proved. 2 *Whart. Ev.*, § 1075.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This suit was on a fire policy. The only defence was that the assured, in violation of a condition of the policy, had put a certain other insurance on the property without the assent of the company. The condition referred to was as follows, viz.: " In case the assured, or the assigns of the assured, shall hereafter make any other insurance on the same property, and shall not, within ten days, give notice thereof to this company, and have the same endorsed on this instrument, or otherwise acknowledged by them in writing, this policy shall cease and be of no further effect." This stipulation was the subject of a special plea, the allegation of which was that the assured had, without notice, insured his property for the sum of $1000 in a company known as La Confiance, of France. The only testimony showing the existence of this latter policy consisted in two statements made in writing by the plaintiff to the defendant, the one being contained in the proof of loss which was called for by the terms of the policy, and the other in a list of the policies upon the property and the proportionate sum due upon each. Relying on this testimony, the counsel of the defendant, at the trial, insisted that it was undisputed that the condition of the policy above mentioned was broken and the assurance was therefore avoided, and to that effect demanded an instruction to the jury. This request was refused, and a verdict directed for the plaintiff.

Therefore, it is obvious that two questions are now presented for solution, viz.: first, was the evidence put in competent to prove the existence of the unauthorized policy; and second, on the assumption of its admissibility, was a breach of the condition in question exhibited.

On the first point, the counsel of the defendant takes the position that according to what was claimed to be the modern rule of evidence, it was legitimate to prove the existence of this policy of insurance by the admissions of the plaintiff, without the production of the instrument, and without accounting for its absence. The broad ground was taken

that the admissions of the contents of a written document, its nonproduction being unexplained, are receivable as primary evidence of its contents. For this doctrine, the case of *Slatterie* v. *Pooley*, 6 *Mes. & Wels.* 664, and the series of decisions to which it gave rise, were relied upon as the leading authorities in its favor. This class of adjudications, it is clear, goes far in the direction of sustaining the rule as claimed. But these decisions are all of modern date, originating in the year 1840, and have not received anything like universal approval by the courts of this country, and it is certain that they are opposed to the immemorial administration of the law in this state. That a written instrument whose existence is put in issue by the pleadings need not be produced at the trial, its absence being unexcused, is a doctrine that as a part of our own law and as a general rule of evidence, has, it is safe to say, never heretofore been advanced in any of our courts. With us, the ancient, and, as it is deemed, the safe, principle has prevailed, that the document is the primary evidence and the admission of its contents secondary evidence, and that the latter cannot be resorted to as long as the former is available. This rule has never been understood to extend to matters aside from the issue and merely incidental to the trial. Thus, the interest of a witness, and similar concerns, could always be shown without the production of the document by force of which such interest had been acquired. Nor was the practice which enforced the general rule without its exceptions; for there were some admissions so formal and solemn in their character, such as admissions in the progress of a suit to be used at the trial, that they were ever regarded as intrinsically possessing all the force of primary evidence. But irrespectively of such limitations and exceptions, the rule that a document forming the basis of the issue must be produced, or its absence excused, before secondary evidence can be resorted to, has, as far as is known, been enforced from the introduction in this commonwealth of the common law to the present time.

But while the evidence in question is not to be validated by force of the theory just criticised and repudiated, we still

think it was competent, and had the effect to prove the existence of the policy in question. Such evidence was not constituted of an ordinary admission, but an admission of a character so formal and, in view of the purpose for which it was designed, so accredited, as to put it on a level with admissions in a course of law, and which are intended to dispense with primary testimony. It was a part of the agreement of assurance that the proof of loss required, upon the happening of a fire, to be furnished to the company should contain a statement of the several insurances upon the property. Such statement was required to be verified by oath, and if it were wilfully false the claim against the company was to become void, its object being to afford to the company a safe basis for its action in dealing with the assured. We think that admissions thus authenticated were properly received at the trial under the circumstances then present, and that their effect was to prove the policy in question.

But, notwithstanding this result, we are of opinion that the instruction to the jury to find for the plaintiff was correct. This view is plainly justified when reference is made to the issue which the defendant was bound to sustain. That issue required proof of two facts: first, that the assured had taken out an unauthorized policy, and that such policy had run for ten days without notice to the company, and without its written sanction. As we have seen, the defendant proved, by the admissions of the plaintiff, the taking out of the policy referred to, but there was no proof whatever with respect to the date of such instrument or to the time when it came into existence. For aught that appears, it may have been obtained within five days before the fire, and if so, the policy in suit was not avoided. A full defence was not made out, and, consequently, the instruction of the trial judge was right.

Let the judgment be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, MAGIE, PARKER, VAN SYCKEL, BROWN, CLEMENT, COLE, McGREGOR.  11.

*For reversal*—PATERSON, WHITAKER.  2.